U.S. Magistrate Judge Paula L. McCandlis

FILED
LODGED

DEC 07 2018

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                               DEPUTY

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>GIZACHEW WONDIE<br><br>Defendant. | NO. MJ18-553<br><br>COMPLAINT FOR VIOLATION<br><br>21 U.S.C. §§ 841(a)(1), (b)(1)(B)<br>18 U.S.C. § 924(c) |

BEFORE, Paula L. McCandlis, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

### COUNT 1

**(Possession of Controlled Substances with Intent to Distribute)**

On or about December 6, 2018, at Seattle, Washington within the Western District of Washington and elsewhere, the defendant, GIZACHEW WONDIE, did knowingly and intentionally possess, and did aid and abet the possession of, with intent to distribute, substances controlled under Title 21, United States Code, to wit: alprazolam, cocaine, oxycodone, adderall and marijuana.

COMPLAINT/WONDIE - 1
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT 2

**(Possession of a Firearm in Furtherance of Drug Trafficking)**

On or about December 6, 2018, at Seattle, Washington, within the Western Judicial District of Washington, GIZACHEW WONDIE did knowingly possess, and did aid and abet the possession of, a firearm, to wit one Ruger P89DC 9mm pistol, serial number 309-80997, in furtherance of a drug trafficking crime, to wit: *Possession of Controlled Substances with Intent to Distribute*, as charged in Count 1 above.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

This Complaint is based upon the following information:

I, TAMMY SPENCER, a Special Agent (SA) with Homeland Security Investigations (HSI), United States Department of Homeland Security (DHS), Seattle, Washington, being first duly sworn on oath, depose and say:

## INTRODUCTION

1. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent (SA) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI), Special Agent in Charge, Seattle, Washington. I have been an HSI Special Agent or a Special Agent with one of ICE's predecessor agencies, the U.S. Customs Service, since April 1998. Since entering on duty, I have investigated a wide variety of criminal violations to include narcotics trafficking, money laundering, wire fraud, commercial fraud, intellectual property crimes, smuggling, illegal exports, counter-proliferation violations, child pornography, and other crimes. I am currently assigned to HIDTA (High Intensity Drug Trafficking Activity Task Force) where my duties include investigating individuals who are involved in the trafficking of illegal substances. I am familiar through experience with how drug users and traffickers use, sell, conceal and

COMPLAINT/WONDIE - 2
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | transport controlled substances. I have also been involved in numerous search warrants,
2 | narcotics buy/bust operations and narcotics arrests.

    2.    The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

    3.    Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

    4.    For the purposes of this Affidavit, "Xanax" refers to pills matching the shape and appearance of either name-brand Xanax (which is produced by Pfizer and contains Alprazolam as its active ingredient) or generic versions of Alprazolam produced by Pfizer or other drug companies; these pills can either be genuine pharmaceutical pills produced by a legitimate prescription drug manufacturer or pills that are illicitly produced by individuals using a pill press machine. During the course of this investigation I—along with members of my investigative team—have worked with representatives of Pfizer who are trained in the identification of these pills. These representatives have relayed to me that generally even the "counterfeit" Xanax pills contain the "API" (Active Pharmaceutical Ingredient) of Alprazolam and are sold to drug abusers seeking the pharmaceutical effects of Xanax/Alprazolam. Xanax/Alprazolam is a common drug of abuse and is a highly controlled substance due to the fact that its tranquilizing affect can cause paranoia and suicidal ideation as well as the impairment of judgment, memory, and coordination. When combined with other substances, it can slow breathing and possibly lead to death. By law, Xanax as well as Alprazolam sold under any brand or generic name is only legally available when prescribed.

COMPLAINT/WONDIE - 3
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.  Based on the information provided by Pfizer brand representatives as well as my conversations with other investigators, I know that the illicit sale of Xanax is highly profitable as these pills can be sold for between $3 and $7 at "wholesale" to other dealers when sold by the hundreds or thousands and up to $20 each to drug addicts as individual pills. The illicit sale of Xanax tablets is at its most profitable when a drug trafficker is able to produce the pills him/herself in mass quantities with the use of a pill press. Using a pill press, an individual is able to covert one kilogram of API (costing approximately $20,000) into 500,000 Xanax tablets.

## INVESTIGATION – SUMMARY OF PROBABLE CAUSE

### A. HSI Investigation

6.  During the first week of October 2018, HSI special agents and investigative partners conducted operations targeting pharmaceutical traffickers operating in Seattle, Washington. In early October, 2018, HSI agents arrested a suspect (hereinafter "S1") who agreed to meet an undercover agent at a preplanned meeting location to sell 20 Xanax pills for $200. S1 did not actually have Xanax in his possession at the time of his arrest (he stated that he was planning on robbing his customer instead). S1 was however in possession of distributable quantities of heroin. S1 agreed to cooperate in exchange for consideration related to this arrest and communicated information related to the manufacturing and sale of illicit drugs, to include the following, relayed in substance and in part:

   a. S1 stated that he is heavily involved in the manufacturing of counterfeit Xanax tablets for sale.

   b. S1 stated he is helping to build a pill press machine with an African male he only knows as "G" from Beacon Hill.

   c. S1 stated the rotary (the last part of the pill press machine) from China was seized by Customs and Border Protection (CBP) when it arrived into the U.S. I later discovered, via CBP, information that corroborated this statement.

COMPLAINT/WONDIE - 4
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    d.    S1 stated he and "G" had a storage unit in Kent where the pill press machine parts were being kept, but after the last shipment was seized by CBP they stopped renting the storage unit.

7. Based on the investigation, which is detailed in part below, I identified "G" as the Defendant, Gizachew Degol WONDIE of Seattle, Washington. Furthermore, based on a review of Washington Department of Licensing records, HSI special agents determined WONDIE drives a silver Audi Q7, Washington license BHT4427 (hereinafter, the Audi).

8. On November 14, 2018, HSI special agents learned that a concerned citizen in Seattle had filed a complaint with the Seattle Police Department (SPD) about alleged drug activity involving WONDIE's vehicle, the Audi. On November 16, 2018, HSI Supervisory Special Agent (SSA) Marco Dkane and I conducted a telephonic interview of the concerned citizen. The concerned citizen provided the following information, relayed in substance and in part:

    a.    Starting at the beginning of this year, s/he observed the Audi from his/her apartment window in the alleyway between 11th Avenue/12th Avenue and E Terrace Street/E Alder Street in the Capitol Hill district of Seattle conducting drug transactions.

    b.    After the local businesses closed, the silver Audi would pull into the alley; nice cars would then also pull up close to the Audi, and the occupant of the other car would either get into the Audi, or make exchanges through the car windows. The exchanges took place mostly at night or during the afternoon. S/he would see something being passed between individuals and cars. The transactions took about a minute.

    c.    The driver of the Audi appeared to be an African male with short hair, well-dressed and in his 30's. (Based upon my surveillances of WONDIE, this is consistent with WONDIE's appearance). It was the same driver who showed up in the Audi every time.

    d.    Since September, s/he has not seen any more drug activity and has not seen the driver of the Audi.

COMPLAINT/WONDIE - 5
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. I know, based on my training and experience, that the type of short interactions described by the concerned citizen are characteristic of drug trafficking activity.

10. Beginning on November 5, 2018 and continuing through December 6, 2018, SSA Dkane, acting in an undercover capacity, conducted a text correspondence with WONDIE. SSA Dkane initiated these communications via WONDIE's Face Book account in the name of "Gizachew WONDIE." During the course of this correspondence, wherein SSA Dkane represented himself to be a female, WONDIE relayed information to include the following:

    a. WONDIE stated "something like that :)" when SSA Dkane asked if he had his own gun;

    b. WONDIE stated he lives in Capitol Hill by Central College;

    c. WONDIE stated that he has "a few" guns in response to SSA Dkane's question;

    d. WONDIE sent SSA Dkane pictures of small amounts of cocaine.

**B. King County Sheriff's Office (KCSO) Investigation**

11. On or about November 20, 2018, HSI special agents learned that WONDIE was being separately investigated by KCSO for a homicide. KCSO believed WONDIE was in possession of the murder weapon, which was a firearm registered to him.

12. Based upon the initial investigation of WONDIE, officers believed that WONDIE was residing at an apartment in the Capitol Hill neighborhood of Seattle near Central College (hereinafter, the Capitol Hill apartment) and driving the Audi. KCSO detectives obtained state search warrants for the Capitol Hill apartment and the Audi to search for evidence of the murder.

13. On or about December 6, 2018, HSI special agents participated in a joint operation with KCSO as they were intending to execute the search warrants.

///

///

COMPLAINT/WONDIE - 6
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

C. **Detention of WONDIE, Search Warrant Executed on WONDIE's Vehicle, and Capitol Hill Residence**

14. At about 0900 hours, WONDIE was detained while sitting in the driver seat of the Audi in Seattle. KCSO deputies conducted an officer safety pat down of WONDIE and recovered the following:

   a. 17.02 grams of cocaine (field-tested positive);
   b. 67 Oxycodone prescription pills;
   c. 18 Adderall prescription pills;
   d. 5 ½ Xanax prescription pills.

15. The prescription pills were contained in two unmarked bottles and a tied-off plastic baggie. Furthermore, many of the pills were different versions of the same drug. For example, there were multiple brands of Oxycodone-type medications.

16. During the search of WONDIE's vehicle, officers found what they believed to be Xanax pills in the driver side coin holder and on the driver seat, suspected mushrooms (psilocybin mushrooms) in the driver door pocket, approximately 1 pound of processed marijuana in the glove box and scales.

17. Based on my training and experience, the quantities of controlled substances possessed, the manner in which they were packaged (i.e., unmarked bottles and/or baggies) and the presence of scales all indicate that these controlled substances were possessed for distribution purposes, and not personal use.

18. After being advised of his <u>Miranda</u> rights, WONDIE stated to investigators that his true residence was not the Capitol Hill apartment, as that residence was actually occupied by his family. Rather, his true residence was 1311 12th Ave S #F401, Seattle, Washington (hereinafter, WONDIE's residence). WONDIE provided investigators the key to his residence (which they later used in the door of the residence). WONDIE also stated that he was the sole occupant of this residence.

COMPLAINT/WONDIE - 7
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19. WONDIE was placed into custody for possession of a controlled substance and transported to the KCSO office. Meanwhile, WONDIE's vehicle was impounded by SPD and transported to the SPD processing room pending a narcotic search warrant.

**D.    Interview of WONDIE**

20. My knowledge of the information WONDIE relayed during this interview is based upon the portions of the interview for which I was present, as well as statements relayed to me by other interviewing officers. This interview occurred after WONDIE had been given his <u>Miranda</u> warning and agreed to speak to law enforcement. Statements are provided in substance and in part.

21. Initially, WONDIE was interviewed by KCSO homicide detectives. He denied knowledge of the murder, the initial reason for contacting him and executing a search warrant. However, as noted below, he did admit to possessing the suspected murder weapon at a point in time.

22. Thereafter, WONDIE was interviewed related to drug trafficking. This interview was attended, in various phases, by myself, SSA Marco Dkane, SPD Officer Nick Evans, and ATF SA Wozniak. Following the interview, SA Wozniak provided his summary which relayed the following:

23. In response to questions, WONDIE stated that he was in possession of narcotics in his apartment, WONDIE's residence. WONDIE also stated there was a 9mm pistol in his home. WONDIE stated that he derived his income, in part, from the sale of narcotics to regular customers. WONDIE acknowledged that he has habitually distributed narcotics in various areas and parks around Capitol Hill.

24. SA Wozniak asked WONDIE questions regarding his gang affiliations, narcotics business, association to violence, and possession of firearms, and received the following information in response. WONDIE stated that he has grown up in the Seattle area and is known to individuals who are part of the Malitia MaliMob, Rainier Vista, and Holly Park criminal street gangs, though he did not admit to being a member of any of

COMPLAINT/WONDIE - 8
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

those organizations. WONDIE did however state that he was aware of, and indeed actively avoiding, the violence surrounding those gangs.

25. WONDIE stated he has been distributing and using narcotics for years, and cited two examples which suggest the duration of this activity. WONDIE detailed being robbed at gunpoint by two males in Tukwila, approximately three years ago, during which, narcotics and cash were taken from him. WONDIE then described being robbed approximately a year and a half ago in West Seattle, again at gunpoint. During this second robbery, the Smith and Wesson .40 caliber handgun he previously possessed was allegedly stolen, according to WONDIE's description of events. This is the weapon which KCSO has linked through ballistic imaging to the homicide they are currently investigating.

26. WONDIE described his narcotics business as predominantly pill-based, though he also sells cocaine and marijuana. WONDIE stated he also habitually used drugs, and was unable or unwilling to estimate the quantity of drugs he sold in any given day or week. His clientele is largely known to him, however there are individuals he deals with who occasionally make him feel uncomfortable. WONDIE stated he prefers to arrange such deals in an open area, visible to the public to avoid being robbed. After the second robbery he experienced, WONDIE told an individual known as "DZ" about the incident. DZ offered WONDIE a 9mm handgun, which WONDIE purchased approximately 18 months ago for $250.00. WONDIE described the firearm as a Ruger 9mm handgun, with a 30-round extended magazine, located in the nightstand drawer in his bedroom. WONDIE also stated a small quantity of narcotics was located in a shoe box in his closet.

27. WONDIE stated he was afraid of being robbed of his drugs, and kept the gun and maintained his concealed pistol license to protect his drug business from robbery and theft. WONDIE stated when he conducted deals he sometimes carried the gun for protection, and ensured it was readily accessible if circumstances arose which called for it – such as near his seat in his vehicle. WONDIE denied being a violent person, but

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

acknowledged the firearm was there to dissuade or repel another robbery attempt and to protect his person and residence.

28.     During the interview, WONDIE also stated something to the effect that he thought he was in a lot of trouble, and wanted to just return back to Africa. It is my understanding that WONDIE is a naturalized U.S. citizen, and that he does have family ties to a country in Africa.

### E. Execution of Warrant on WONDIE's Residence, Discovery of Firearm and Drugs

29.     On December 6, 2018, investigators from HSI, SPD, and KCSO executed two state search warrants on WONDIE's residence. These two search warrants, authorized by the Honorable King County Superior Court Judge Kristin Richardson, authorized the seizure of evidence related to the homicide and to drug trafficking, respectively. Prior to the execution of these warrants, WONDIE told investigators, under Miranda, that he was the sole occupant of the residence.

30.     I participated in this search and my knowledge of the items discovered is based upon the combination of my personal observations and information provided to me by other searching officers. The residence contained extensive evidence of drug trafficking activity, to include the following:

a. From the spare bedroom, investigators discovered the following:
- A large pill press. This pill press appeared to be the same variety described by both S1 and a Pfizer representative who provides expertise to law enforcement on the kinds of pill presses used to make "Xanax" tablets in bulk.
- Military body armor with serial numbers removed.

b. From the main bedroom investigators discovered:
- A Ruger P89DC 9mm handgun, serial number 309-80997, with a 30-round extended-capacity magazine containing 22 bullets, along with a standard magazine containing 8 bullets. The handgun was discovered in the second drawer of the nightstand—as described by WONDIE during his interviews.

COMPLAINT/WONDIE - 10
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Approximately 11,000 white Xanax pills weighing approximately 3324.1 grams in several clear plastic bags found in the main bedroom's closet.
- 171 grams of powder cocaine found in the main bedroom's closet.
- 152 syringes containing Butane Hash Oil ("BHO," a cannabis/hash product)

c. From the dining room table, investigators discovered a scale (based on my training and experience, I know scales are often used by drug traffickers to weigh drugs for sale).

d. Also located throughout the house (in the kitchen, dining area, and main bedroom closet) a total of approximately 3800 grams of marijuana.

31. All drugs, with the exception of the pressed pills and the marijuana, were identified via field test using a standard narcotics identification kit. The pills were identified based on their markings. The marijuana was identified based on its appearance and smell. Again, based on my training and experience, based on the quantities recovered, the manner in which they were packaged, and the presence of the pill press and a scale, the controlled substances recovered were consistent with drug distribution, not personal use. Of course, WONDIE admitted as much post-*Miranda*.

32. In addition to the above, investigators discovered several documents establishing dominion and control over the residence, to include leasing paperwork in WONDIE's name and schoolwork in WONDIE's name. Further, the apartment had one bed.

F.  **Use of Firearms in Drug Trafficking**

33. Following the interview, ATF SA Wozniak provided the following information based on his training and experience as both an ATF SA and, previously, a police officer. I note this is consistent with my own training and experience:

> The inherent illegality of the narcotics trade removes the protection by law enforcement a law-abiding citizen enjoys. Drug traffickers cannot call the police to protect their illegal enterprise without risking its exposure and confiscation, along

COMPLAINT/WONDIE - 11
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | with their prosecution and imprisonment. Based on SA Wozniak's training and |
| 2 | experience, he is aware it is common for drug dealers to possess firearms and |
| 3 | ammunition to protect their drugs, assets, and persons from hostile gangs, rival |
| 4 | traffickers, drug users, other criminals, and from law enforcement. The quantity of |
| 5 | narcotics/equipment possessed by WONDIE would be valued in the tens of |
| 6 | thousands, if not hundreds of thousands of dollars, and would expose him to the |
| 7 | potential for assault by drug users, rival dealers, rival gang members and other |
| 8 | criminals who were aware of the narcotics and currency he possessed, requiring |
| 9 | WONDIE to possess firearms to protect his criminal enterprise, as evidenced by |
| 10 | the Ruger firearm recovered. |
| 11 | /// |
| 12 | /// |
| 13 | /// |
| 14 | /// |
| 15 | /// |
| 16 | /// |
| 17 | /// |
| 18 | /// |
| 19 | /// |
| 20 | /// |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

COMPLAINT/WONDIE - 12
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

34. Based on the drugs recovered, WONDIE's statements that he distributed controlled substances and possessed a firearm to secure his drug trafficking, the discovery of the gun in proximity to distribution-level amounts of illicit drugs, and the other facts documented above, I respectfully submit there is probable cause that GIZACHEW WONDIE committed the offense of possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), (b)(1)(C) and (B)(1)(D) and that GIZACHEW WONDIE also possessed a firearm in the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c).

_____
TAMMY SPENCER, Complainant
Special Agent, Homeland Security Investigations

Based on the Complaint and Affidavit, to which the above-named agent provided a sworn statement attesting to the truth of the contents of such, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 7th day of December, 2018.

_____
The Honorable Paula L. McCandlis
United States Magistrate Judge

COMPLAINT/WONDIE - 13
MJ18-553

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970